UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA


JAMES ALLEN MACHEN                          Civ. No. 11-1557 (DWF/JSM)

      Plaintiff,                                   REPORT AND RECOMMENDATION

v.

SCOTT IVERSON, et. al.

      Defendants.


The above matter came before the undersigned on Defendants Clifford Lozinski and Johnson, West & Co., PLLC's Motion to Dismiss [Docket No. 10]; Defendants Thomas Flynn, Thomas Alexander, and Larkin, Hoffman Daly & Lindgren LTD's Motion to Dismiss [Docket No. 16]; Defendant Central Mortgage's Motion to Dismiss [Docket No. 18]; Defendant Minnesota Department of Revenue's Motion to Dismiss [Docket No. 20]; Defendant City of Chaska's Motion to Dismiss [Docket No. 28]; Defendants Anne Barry Moh and the Hon. Bruce Peterson's Motion to Dismiss [Docket No. 31]; Defendants Patricia Bodin and ProTitle, Co.'s, Motion to Dismiss [Docket No. 32]; Defendants Richard Stanek, Hennepin County Support and Collections, Bev Lowe, Ken Collias and Karen Extel's Motion to Dismiss [Docket No. 37]; Defendants Saxon Mortgage and Deutsche Bank's Motion to Dismiss or in the Alternative for a More Definite Statement [Docket No. 42]; Defendants KleinBank, Daniel Klein and Matthew Klein's Motion to Dismiss [Docket No. 56]; Defendants Associated Bank, National Association and Gerald Anderson's Motion to Dismiss [Docket No. 63]; Defendant Joseph Dicker's Motion to Dismiss [Docket No. 67]; Defendant John Hedback's Motion

to Dismiss [Docket No. 69]; the United States' Motion to Substitute as Proper Defendant for Scott Iverson and Patricia Patton and Motion to Dismiss [Docket No. 84]; Defendant American Family Insurance's Motion to Dismiss [Docket No. 91]; Defendant Michael L. Perlman's Motion to Dismiss [Docket No. 98]; and Plaintiff James Allen Machen's Notice of Voluntary Dismissal [Docket No. 102].

This matter was referred to the undersigned Magistrate Judge for a Report and Recommendation by the District Court pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1.

I.    BACKGROUND

A.    The Complaint

On June 13, 2011, plaintiff James A. Machen, who is pro se, filed a Complaint naming the above-listed defendants (collectively, the "moving defendants"), as well as his former wives Mahlega Abdesharafat Athanta Croswell and Robin Campbell (f/k/a Robin Machen), Andrew Moran, SMG, Inc., Michael Morton, Mark Saliterman, Morton Equity, LLC, "KL Title/Brend[a] [C]olston [#L 20355319]," Zurich Assurance of America, Bank of America Mortgage, Aislee Smith, Commercial Properties, Commercial Partners and Mallie Sharafat.  Complaint [Docket No. 1].

It is difficult to either characterize or summarize Machen's Complaint.  The caption indicates that the Complaint is for "RICO and Discrimination and Fraud." Complaint, p. 2.  Generally, Machen has alleged that the defendants engaged in a RICO-style conspiracy to defraud him of his "rightful earned accumulations of equity, redistributing unjust enrichment to all involved, allegedly breaking the laws to achieve its end."  Id., p. 1.  Similarly, Machen asked that the Complaint be considered a "RICO

2

filing based on the treble damages contained in the RICO Act of 1970." Id.  Machen also invoked the "Civil Rights Act."  He did not elaborate on this cause of action except to say that "the 1964 & 1967 Civil Rights Acts have not eradicated the undercurrent bias, having been preceded by Plessy V. Fergerson [sic] 1898 and then 1954 Brown v. Bd. of Education for school integration."   Id.  In an affidavit that accompanied the Complaint, Machen bemoaned his poor relationship with his adult children, which he blamed on his former wife, Robin Campbell.  Affidavit of James Allen Machen ("Machen Aff."), pp. 1-2.  [Docket No. 2].  According to Machen, "[t]ime now for all to get their due for the wrong doings and alleged crimes committed in this long excruciating suffering caused by racism, jealousy and unconstitutional treatment while covering for each other, while breaking w. ethics and the laws of governance to project each citizen." Id. The Complaint does not distinguish between any of the defendants regarding these alleged causes of action.

As best as this Court can discern, the events at issue occurred between 1998, when the IRS began an audit of Machen's business taxes, and March, 2009, when Machen was forced from his home.  Id., ¶¶1, 20.  The Complaint references numerous wrongs that apparently Machen has suffered over eleven years including the IRS audit, divorce and child support enforcement proceedings, a bankruptcy, a mortgage foreclosure, the sheriff's sale of his residential property, and water damage to his commercial property.  See generally Complaint.  The Complaint is organized into three sections entitled "Averments and Background," "Annihilation of finality of equity, career and lifestyle," and "Final Blow."  Complaint, pp. 1, 3, 5.

Machen alleged that defendant Scott Iverson of the IRS conducted a tax audit of Machen's business, Jamco International, Inc., in 1998.  Complaint, ¶1.  Defendant Clifford Lozinski of the Johnson, West & Co. firm, performed tax work for Jamco and approved amounts assessed by the IRS and did not allow the "deductive cash payment" that Machen made to his former wife.  Id., ¶¶2, 3.[1]  Machen alleged that defendant City of Chaska somehow cheated him out of an overpayment he made to the City in connection with a property that then went into foreclosure.  Id. ¶3.  As against defendant Associated Bank, Machen alleged that he took a loan out in 2000 and the Bank charged him 10% interest, but "Gerard [sic] Anderson kept the funds to be paid over two years but charged me interest of 10% while I had only partial use of the funds."  Id., ¶4.  The Complaint alleged that "Bank of America has an accounting history document reflecting that they were paid in full, $398,000 in late July, 2004 and that it remains unknown what Associated Bank the 2nd mortgage holder was paid!"  Complaint, ¶14.  Paragraph 18 alleged that "[t]hen SMG INC a non existing (exhibit) entity was paid $536,000 via Associated Bank would implicate Associated Bank to be involved in the fraud." [2]

Paragraphs 6 and 10 of the Complaint refer to dissolution proceedings of Machen's marriage to defendant Robin Campbell, over which defendant Hennepin County District Court Judge Bruce Peterson presided in 2002 and 2003.  Machen

---

[1]    The Court interpreted this to mean that Machen believed that he was entitled to a tax deduction for payments made to his former wife and that Lozinski did not account for the deduction.

[2]    Machen's reference to an "exhibit" apparently relates to a "Certificate of No Record" issued by the Minnesota Secretary of State's Office on December 12, 2010, indicating that the Secretary of State could not locate records for "SMG Inc."  The Certificate is attached to Machen's affidavit [Docket No. 2-1].

alleged that in the time period of 2003-2004, his former bankruptcy lawyer, defendant Joseph Dicker, "bamboozled" him in connection with the dissolution proceedings by having him deposit funds that Machen owed his former wife for child support with the Clerk of Court and by telling Machen that if he did not provide the security for his child support payments as required by Judge Peterson, that Judge Peterson would take away Machen's residence.  Complaint, ¶10.

As against defendants Daniel Klein, Matthew Klein, and KleinBank (formerly First National Bank of Chaska), Machen alleged wrongdoings in connection with a bankruptcy filing involving Machen's company, Jamco.  Id., ¶11.  Machen claimed that these defendants "posted, thru their employees erratic accounting payments which when started with the incorrect balance would end up with a much larger balance due than borrowed.  They did submitted [sic] a wrong doing or fraud claim in BKY 02.90781 account in order to be unjustly enriched by more than $750,000 owed and paid by a U.S. trustee without question."  Id.  Machen asserted that attorneys Thomas Flynn, Thomas Alexander and the law firm of Larkin, Hoffman, Daly, Lindgren "bamboozled" the bankruptcy trustee by forming a collusive relationship with defendant Mahlega Abdsharafat Athana Crosswell (one of Machen's former wives) that somehow transferred $1,000,000 to Abdsharafat.  Id.,¶12-13.  Machen also complained of Flynn's failure to object when the bankruptcy court converted Jamco's bankruptcy to a Chapter 7 liquidation.  Id., ¶9.

Defendant John Hedback is named in the caption of the Complaint, but there is no reference to him in the body of the Complaint.  According to Hedback, he was the Chapter 7 bankruptcy trustee for Jamco who Flynn allegedly "bamboozled."  Answer of

Defendant John A. Hedback, ¶7 [Docket No. 22].   Hedback's Answer indicated that Jamco filed a Chapter 11 bankruptcy in the District of Minnesota on April 5, 2002 and that the bankruptcy was converted to a Chapter 7 on May 27, 2001 (sic).[3]  Id., ¶¶3, 5. In his role as bankruptcy trustee, Hedback paid claims submitted by defendant Mallie Sharafat pursuant to a Trustee's Final Report and Proposed Distribution.  Id., ¶7.

Machen accused defendant Mark Saliterman of manufacturing a fraudulent loan in connection with Machen's residence and that defendants K.L. Title, Brenda Colston, Pro-Title, Patricia Bodin, Central Mortgage, Saxon Mortgage and Deutsche Bank participated in the fraud.   Id., ¶14-17.  Bev Lowe, Hennepin County Sheriff Richard Stanek and attorney Michael Perlman were named as defendants as a result of their apparent involvement in a sheriff's sale of Machen's residence following a mortgage foreclosure.  Complaint, ¶¶18, 20.

Machen named American Family Insurance as a defendant because "American Family Ins. Piggy-backed on the public knowledge of the plaintiff information and voided out payment for hail storm damage to personal residence." Id., ¶21.  He named the Minnesota Department of Revenue ("MDOR") as a defendant because it "manufactured documents to assess insane taxes not owed without the plaintiff['s] actual signature to further halt the career of the plaintiff and lockout of the American Dream!" Id., ¶22.

Machen alleged that the banks and mortgage lenders named as defendants "racketeered" to confiscate $3,000,000 in property from him.  Id., ¶19.  As damages, Machen sought $129,289,500.  Id., p. 7.

---

[3]      This appears to be a typographical error.   The Bankruptcy Court converted Jamco's bankruptcy from a Chapter 11 to a Chapter 7 on May 27, 2003.  Jamco International, Inc., Bankruptcy Case No. 02-90781(D. Minn.) [Docket No. 76].

**B.** __Defendants' Responses to the Complaint and Motions to Dismiss__

The MDOR, Joseph Dicker, John Hedback, and Michael Perlman answered Machen's Complaint [Docket Nos. 8, 15, 22, 78] and also moved for dismissal [Docket Nos. 20, 67, 69, 98].   The other moving defendants filed motions to dismiss in lieu of answering.   There is a common theme among the moving defendants' arguments for dismissal—Machen's Complaint is a nearly incoherent collection of rambling statements that does not meet the pleading standards of Rule 8 of the Federal Rules of Civil Procedure and must be dismissed pursuant to Rule 12(b)(6).   Nonetheless, because each of the moving defendants addressed different allegations lodged against them, the Court will briefly describe their motions.

Lozinski Defendants.   Defendants Lozinski and Johnson, West & Co. (the "Lozinski Defendants") moved for judgment on the pleadings on the basis of Rule 12(b), Machen's failure to comply with Rule 8(a), and lack of federal subject matter jurisdiction or diversity jurisdiction.   Memorandum of Law of Defendants Clifford Lozinski and Johnson, West & Co., PLLC in Support of their Motion for Judgment on the Pleadings ("Lozinski Defs.' Mem."), pp. 3-7 [Docket No. 12].   These defendants also claimed that the Complaint failed to adequately plead a RICO claim and that to the extent that Machen's allegations against them could be construed to be an accounting malpractice claim, such claims are subject to a six-year statute of limitations pursuant to Minn. Stat. §541.05.   Because Machen's allegations concerned actions that the Lozinski Defendants took in 1998, his claims based on accounting malpractice are time-barred. Id., pp. 8-9.

Larkin, Hoffman Defendants.   Defendants Thomas Flynn, Thomas Alexander, Larkin, Hoffman Daly & Lindgren, Ltd., Patricia Bodin and Pro Title Co. (the "Larkin, Hoffman Defendants") moved for dismissal pursuant to Rule 12(b)(6).   Defendants Thomas Flynn, Thomas Alexander, Larkin Hoffman Daly & Lindgren, Ltd., Patricia Bodin, and Pro Title, Co.'s Memorandum of Law in Support of Motion to Dismiss ("Larkin, Hoffman Mem."), pp. 3-5 [Docket No. 90].   The Larkin Hoffman Defendants argued that Machen lacked standing to bring a RICO claim because nowhere in the Complaint did he allege conduct by the Larkin, Hoffman Defendants that could be construed to constitute racketeering, and even if Machen could establish standing, he has failed to allege facts to make out a RICO claim. Id., pp. 7-11.  As to Machen's claim of discrimination, the Larkin Hoffman Defendants contended it fails to state a claim because Machen was never employed by them, nor did he exhaust his administrative remedies by filing a charge of discrimination.   Id., p. 11.   The Larkin Hoffman Defendants further submitted that any claim of fraud against them failed because Machen has not met the heightened pleading requirements of Rule 9(b). Id., pp. 11-13.

The Larkin, Hoffman Defendants also maintained that Machen did not plead legal malpractice against the Larkin, Hoffman attorneys, although, "legal malpractice is the only claim that [the Larkin, Hoffman] defendants can imply from [Machen's] vague factual assertions." Id., p. 13.   The Larkin, Hoffman Defendants asserted that to the extent that the Complaint can be construed to allege legal malpractice, it must be dismissed because Machen failed to allege any of the elements of legal malpractice, as defined by Minnesota law.   Id., p. 13-14 (citing Blue Water Corp. v. O'Toole, 336 N.W.2d 279, 281 (Minn. 1983) (defining the elements of legal malpractice)).

Finally, the Larkin, Hoffman Defendants alleged that all of Machen's claims are time-barred because the statute of limitations for RICO claims is four years, the statute of limitation for fraud and legal malpractice is six years, and the statute of limitations for filing a discrimination charge under Title VII of the Civil Rights Act is 300 days.  Id., pp. 14-15.  Although the limitations periods for fraud, RICO and legal malpractice claims may be tolled by fraudulent concealment, these defendants contended that Machen hadnot alleged tolling based on fraudulent concealment.  Id., p. 16.

Central Mortgage.  Defendant Central Mortgage moved for dismissal pursuant to Rule 12(b)(6) because "[i]t is clear, based on the rambling allegations contained in the Complaint, that Plaintiff has failed to state a claim against Central upon which relief can be granted."  Central Mortgage Company, Inc.'s Memorandum of Law in Support of its Motion to Dismiss ("Central Mortgage Mem."), p. 1 [Docket No. 51].  Machen alleged that an unidentified mortgage was moved to and from various entities.  Complaint, ¶17.  However, Central Mortgage never held an interest in any of Machen's mortgages.  Affidavit of Lou Ann Howard[4] ("Howard Aff."), ¶5 [Docket No. 52].   Rather, Central Mortgage serviced a loan executed by Machen in favor of Maribella Mortgage from July 2, 2006 to August 8, 2008.  Id., ¶4. Because Machen has not alleged any claims against Central in connection with its servicing of the mortgage, his Complaint against Central Mortgage must be dismissed.  Central Mortgage Mem., p. 5.  Central Mortgage also asserted that based on the standard for summary judgment, there were no genuine

---

[4]    Lou Ann Howard is a Senior Vice President for Central Mortgage.  Howard Aff., ¶1.

issues of material fact that would preclude summary judgment in its favor.  Id., pp. 3-4.[5]

In the alternative, Central sought an order requiring Machen to amend his Complaint

pursuant to Rule 12(e) to provide a more definite statement of his claims against

Central.  Id.  Finally, Central Mortgage moved for dismissal because Machen never

properly served it.  Id., p. 6; Howard Aff., ¶6.

MDOR.  The MDOR moved to dismiss the Complaint pursuant to Rule 12(b)(6)

and on the ground that Machen's claims against it are barred by the Eleventh

Amendment, which has not been abrogated by the RICO statute.  Memorandum in

Support of Minnesota Department of Revenue's Motion to Dismiss ("MDOR Mem."), pp.

2-3.  [Docket No. 71].  Additionally, to the extent that Machen's Complaint could be

construed to be an appeal of a tax assessment by the MDOR, those matters are within

the exclusive jurisdiction of the Minnesota Tax Court.  Id., p. 4.

City of Chaska.  The City of Chaska Economic Development Authority ("Chaska

EDA") moved to dismiss Machen's Complaint pursuant to Rule 12(b)(6) and because

any RICO claims against the Chaska EDA are time-barred.  City of Chaska Economic

Development Authority's Memorandum of Law in Support of Its Motion to Dismiss

("Chaska EDA Mem."), pp. 2-4 [Docket No. 87].

---

[5]      Central Mortgage's invocation of Rule 56 was based on its argument that the
Court could convert a motion to dismiss to a motion for summary judgment if it
considered matters outside the pleadings.  Central Mortgage Mem., p. 3.  Although not
explicit, Central Mortgage appeared to be referring to the Howard affidavit submitted for
the Court's consideration.

Barry and Peterson.  Defendants Anne Barry[6] and Judge Bruce Peterson moved to dismiss Machen's Complaint on Eleventh Amendment immunity grounds.   Judge Peterson is a judge of the Minnesota State District Court, and Anne Barry is the Deputy Commissioner of the Minnesota Department of Human Resources.   Memorandum of Law in Support of Motion to Dismiss of Defendants Anne Barry and Judge Bruce Peterson ("Barry/Peterson Mem."), pp. 1-3 [Docket No. 66].  These defendants asserted that the State has not waived its immunity in connection with Machen's claims.  Id., p. 3.  Additionally, to the extent that Machen was suing Judge Peterson in his individual capacity, those claims are barred by judicial immunity.  Id., p. 4.  Finally, although Barry is listed as a defendant in the case caption, she is not referenced at all in the body of the Complaint.   Therefore, these defendants argued that the Complaint as to Barry violates Rule 8(a) and should be dismissed.  Id., p. 6.[7]

Hennepin County Defendants.   Defendants Hennepin County Sheriff Richard Stanek, Hennepin County Support and Collections, Bev Lowe, Ken Collias and Karen Extel (Axtel) (the "Hennepin County Defendants") moved for dismissal pursuant to Rule 12(b)(6), noting that Stanek, Collias and Extel (Axtel) are not mentioned anywhere in the Complaint except the caption.   Memorandum in Support of Motion to Dismiss by Defendants Richard Stanek (Sheriff), Hennepin County Support and Collections, Bev Lowe, Ken Collias and Karen Extel ("Hennepin County Defs.' Mem."), p. 1 [Docket No.

---

[6]     The Complaint incorrectly identified Anne Barry as Ann Barry Moh. Memorandum of Law in Support of Motion to Dismiss of Defendants Anne Barry and Judge Bruce Peterson, p. 1 [Docket No. 66].

[7]     These defendants objected that the Complaint was not signed and therefore violated Rule 11.  Barry and Judge Peterson Mem., p. 6.  The Court notes that Machen's notarized signature appears on page 7 of the Complaint.

75].[8]   According to the Hennepin County Defendants, "there is absolutely no explanation as to how Richard Stanek, Bev Lowe, Ken Collias, Karen Extel (Axtel) or Hennepin County Support and Collections committed any of Plaintiff's accusations and allegations." Id., pp. 2-3.

Saxon/Deutsche Bank Defendants.  Defendants Saxon Mortgage Services, Inc. and Deutsche Bank National Trust Company (incorrectly called "Deuche Bank" in the Complaint) (the "Saxon/Deutsche Bank defendants") moved for dismissal pursuant to Rule 12(b)(6) or, alternatively for a more definite statement pursuant to Rule 12(e).  Defendants Saxon Mortgage and Deutsche Bank's Memorandum of Law in Support of Motion to Dismiss or, Alternatively, for a More Definite Statement ("Saxon/Deutsche Bank Mem."), pp. 2-7 [Docket No. 44].  These defendants asserted, as have others, that Machen made no effort to describe the facts, or the "who what, when, where, how" that would support either a fraud or RICO claim against them.  Id., p. 5.   The Saxon/Deutsche Bank Defendants also maintained that Machen did not properly serve Deutsche Bank, and has improperly identified Deutsche Bank as "Deuche Bank" in the Complaint.  Id., p. 6.  As a result, these defendants argued that the Court lacked jurisdiction over Deutsche Bank and the Complaint against it must be dismissed.  Id., pp. 6-7.

KleinBank Defendants.  Defendants KleinBank, Daniel Klein, and Matthew Klein (the "KleinBank Defendants") moved for dismissal on the grounds that Machen's Complaint failed to establish a basis for jurisdiction in the Federal District Court.

---

[8]     Machen implied that Hennepin County Child Support and Collections committed "grand larceny" by overbilling Machen for child support payments due to his former wife, but there are no facts to support this statement.  Complaint, ¶10.

Memorandum of Law of Defendants KleinBank, Daniel Klein and Matthew Klein in Support of Their Motion to Dismiss ("KleinBank Mem."), pp. 2-3 [Docket No. 58]. The KleinBank Defendants noted that Machen did not serve Matthew Klein with the Summons and Complaint, and that Daniel Klein, who was personally served, is not authorized to accept service on behalf of KleinBank, as he is not an officer. Affidavit of Charles Arndt ("Arndt Aff."), ¶¶ 4-6 [Docket No. 60]. As a result, KleinBank was never properly served pursuant to Fed. R. Civ. P. 4(h)(1)(B). KleinBank Mem., p. 4. The KleinBank Defendants also moved for judgment on the pleadings, arguing that Machen failed to plead fraud with the requisite specificity and failed to satisfy RICO pleading requirements. Id., pp. 4-6.

Associated Bank Defendants. Associated Bank, National Association and Gerald Anderson ("Associated Bank Defendants") moved for dismissal pursuant to Rule 12(b)(6), arguing that Machen's Complaint did not describe any cognizable claims against them, and if Machen was alleging fraud, he failed to do so with the requisite particularity. Associated Bank, National Association's and Gerald Anderson's Memorandum in Support of Motion to Dismiss Plaintiff's Complaint ("Associated Bank's Mem"), p. 2 [Docket No. 64]. In addition, Machen alleged that his last contact with Associated Bank or Anderson was in 2004, which the Associated Bank Defendants contended barred any claims based on fraud or breach of contract based on the six-year statute of limitations. Id., p. 3. Finally, these defendants noted that there is no evidence that Associated Bank or Anderson were ever properly served with the Summons and Complaint. Therefore, the Complaint should be dismissed with prejudice. Id.

<u>Joseph Dicker.</u>  Joseph Dicker's memorandum of law in support of his motion to dismiss provided some context for the allegations against him in Machen's Complaint. Memorandum of Law in Support of Motion to Dismiss of Joseph W. Dicker ("Dicker Mem.") [Docket No. 101].  Dicker is an attorney who represented Machen in connection with Machen's Chapter 13 bankruptcy.  <u>Id.</u>, p. 2.  Dicker advised Machen that he was at risk of losing his homestead as a result of a property sequestration order issued by the family court as financial security for Machen's support obligations to his former wife.  <u>Id.</u> Machen asked Dicker to represent him in the family court proceedings, which Dicker did.  <u>Id.</u>  Although Machen alleged that Dicker "bamboozled" him in connection with the dissolution proceedings, Dicker stated that all of his actions were undertaken in good faith and with the "express consent and authority and at the direction of the Plaintiff." <u>Id.</u>, p. 3.

Dicker moved to dismiss the Complaint on the basis of lack of subject matter jurisdiction, failure to state a claim, failure to plead fraud with specificity, and failure to properly plead a RICO claim.  <u>Id.</u>, pp. 3-7.  Additionally, to the extent that Machen's Complaint could be construed to allege breach of contract or fraud against Dicker, those claims are barred by the six-year statute of limitations.  <u>Id.</u>, p. 8.

<u>John Hedback.</u>  John Hedback, the former Chapter 7 bankruptcy trustee, moved for dismissal on the grounds that the Complaint failed to meet the pleading standard of Rule 8(a), Machen failed to plead fraud with particularity pursuant to Rule 9(b), the Complaint violated Rule 11 standards, and the Complaint failed to state a claim on which relief could be granted pursuant to Rule 12(b)(6).  Defendant John A. Hedback's

Motion to Dismiss ("Hedback Motion"), p. 1 [Docket No. 69].[9]  Hedback also moved for judgment on the pleadings.  Id.

United States.   The United States moved to dismiss IRS employees Scott Iverson and Patricia Patton from the lawsuit and to substitute the United States as the proper defendant.   Memorandum in Support of the United States' Motion to Substitute Itself as the Proper Defendant and to Dismiss ("Gov't Mem."), p. 1 [Docket No. 85].   The Government then moved for dismissal pursuant to Rules 12(b)(1) and 12(b)(5) for lack of subject matter jurisdiction and insufficient service of process.  Id.

Patton is not referenced in the body of the Complaint, although the Government has identified her as an IRS employee.   Id., p. 2.   The Government argued that any possible relief in this matter could only come from the United States, not from Iverson and Patton.   Id.   Therefore, the United States should be substituted as the proper defendant.   Gov't Mem., p. 2.   However, even if the United States were substituted as the defendant, the claims against it must be dismissed on the following grounds: (1) the United States has not waived its sovereign immunity and consented to be sued and, accordingly, the Court does not have subject matter jurisdiction over the matter; (2) Machen failed to allege that he exhausted his administrative remedies before bringing suit in federal district court for damages as a result of unauthorized collection of taxes pursuant to 26 U.S.C. §7433(a); (3) to the extent that Machen's allegations could be construed as a refund suit, he failed to exhaust his administrative remedies as required

---

[9]      Hedback stated in his motion he would file a memorandum of law and affidavit, once a date had been set for the hearing.  Hedback Motion, p. 1.  No date for a hearing was set as the Court determined it would decide all motions on the papers.  See Order, Amended Order, and Second Amended Order [Docket Nos. 79, 88, 97].  Thus, Hedback filed no memorandum or affidavit.

by 26 U.S.C. §7433; and (4) Machen failed to properly serve his summons and complaint on the United States, Patton, or Iverson. Id., pp. 4-6.

American Family.    American Family Insurance insured Machen's residence. Affidavit of Troy Bachmann ("Bachmann Aff."), ¶3; Ex. 1, (insurance policy issued to Machen). [Docket No. 94]. On August 11, 2007 Machen submitted a claim for storm damage to his roof and American Family paid $1,966.35 on the claim. Bachmann Aff., Ex. 2 (claim record of payment). Machen alleged additional storm damage beyond the payment American Family made and the matter was submitted to two appraisers and an umpire, as provided for in the policy. Bachmann Aff., Ex. 1, p. 5. An appraisal award was made on November 26, 2008, denying Machen any further payments for the storm damage. Id., Ex. 3. American Family forwarded the award to Machen on December 4, 2008 and then wrote to him again on December 18, 2008, indicating that American Family "will be unable to consider payment for replacement of your roof." Id.; Exs. 4, 5.

American Family moved for dismissal pursuant to Rule 12(b)(6). Memorandum in Support of American Family Insurance's Motion to Dismiss ("American Family Mem."), pp. 3-4. Additionally, as the insurance policy contained a two-year statute of limitations on suits brought against it, with the limitations period running from the date of loss, and the hail damage referenced in the Complaint occurred on August 11, 2007, American Family contended Machen's claim against it is now time-barred. Affidavit of Troy Bachmann, Ex. 1, p. 9 (¶19) (insurance policy issued to Machen); American Fam. Mem., p. 5; Complaint, ¶21.

Michael Perlman.    Attorney Michael Perlman moved for dismissal pursuant to Rule 12(b)(6), characterizing Machen's Complaint as a "'mostly disorganized,

incomprehensible [collection of] statements, if not ramblings or jargon. " Memorandum in Support of Michael Perlman's Motion to Dismiss ("Perlman Mem."), p. 3 [Docket No. 99] (quoting <u>Allen v. Minnesota</u>, Civ. No. 08-4757 (DWF/RLE), 2008 WL 4279506 at *1 (D. Minn., Sept. 10, 2008).   In the alternative, Perlman moved to require Machen to provide a more definite statement of the claims against him.   Perlman Mem. in Support, p. 3.

The remaining named defendants – Mahlega Abdsharafat Athanta Croswell, Robin C. Campbell (f/k/a Robin Machen), Andrew Moran, SMG, Inc., Michael Morton, Mark Saliterman, Morton Equity LLC, Bank of America Mortgage, KL Title/Brend[a] Colston, Zurich Assurance, Bank of America Mortgage, Aislee Smith, Commercial Properties, Commercial Partners and Mallie Sharafat (collectively, the "non-moving defendants") — were never served with the Summons and Complaint. <u>See</u> Docket.

C.   <u>**Machen's Failure to Respond to the Moving Defendants' Dispositive Motions and Machen's "Notice of Cancellation"**</u>

On August 16, 2011 this Court ordered Machen to file and serve on or before October 14, 2011, a separate response to each of the thirteen dispositive motions that had been filed at that point.   Order, p. 2 [Docket No. 79].   The Order stated that "if plaintiff fails to adhere to the deadlines set forth in this Order, the Court will consider granting defendants' motions." <u>Id.</u>   The Court noted that Machen was <u>pro se</u> and directed him to the District of Minnesota's webpage:  Representing Yourself (Pro Se) on its website. <u>Id.</u>

The Court issued similar Orders on August 30, 2011, and September 16, 2011, after the Government and American Family had filed their respective dispositive motions.  [Docket Nos. 88, 97].   These Orders <u>again</u> required Machen to serve and file

a separate response to each dispositive motion on or before October 14, 2011. Amended Order, p. 3; Second Amended Order, p. 3. The Court again cautioned Machen that the Court would consider granting the pending dispositive motions if he failed to comply with the deadlines described in the Order. Id. Perlman filed his motion shortly after the Second Amended Order was issued. See Docket No. 98 (M. Perlman's Motion to Dismiss, October 6, 2011).

On October 13, 2011, the day before Machen's responses were due, Machen filed a one line statement that stated: "To: All Involved  I, James Allen Machen, as Plaintiff, hereby cancels the lawsuit/action, without prejudice." Notice of Voluntary Dismissal [Docket No. 102]. Many of the moving defendants responded to this "cancellation" notice, asking the Court to disregard Machen's attempt to "cancel" his lawsuit without prejudice, and to decide their dispositive motions on their merits. See e.g. Letter to the Court dated October 19, 2011 from counsel for Central Mortgage [Docket No. 103]; Letter to the Court dated October 20, 2011 from the United States [Docket No. 104]; Letter to the Court dated October 21, 2011 from counsel for the Larkin Hoffman Defendants [Docket No. 105]; Letter to the Court dated October 21, 2011 from counsel for the Lozinski Defendants [Docket No. 106]; Reply Memorandum of the KleinBank Defendants [Docket No. 108]; Letter to the Court dated October 21, 2011, from counsel for the Associated Bank Defendants [Docket No. 107]; Letter to the Court dated October 27, 2011 from counsel for the City of Chaska [Docket No. 109]; Letter to the Court from counsel for Saxon/Deutsche Defendants [Docket No. 110]; Letter to the Court dated November 1, 2011 from defendant Hedback [Docket No. 111].

## II.    ANALYSIS

On October 13, 2011, Machen filed a pleading "cancel[ling] the lawsuit without prejudice." [Docket No. 102].  At the point he filed this pleading, defendants MDOR, Joseph Dicker, John Hedback, and Michael Perlman had answered Machen's Complaint and filed motions to dismiss.  [Docket Nos. 8, 15, 20, 22, 67, 69, 78, 98].  Other defendants who had been served the Complaint filed motions to dismiss in lieu of answering.  Three of those defendants, Central Mortgage, the KleinBank Defendants and American Family, relied on facts outside the Complaint in support of their motions, although none of them moved for summary judgment in the alternative to their motions to dismss.  Central Mortgage did reference Rule 56 and submitted that there were no genuine issues of material fact that would preclude summary judgment in its favor. Central Mortgage Mem., pp. 3-4.

Machen's attempt to voluntarily dismiss his suit against all defendants without prejudice raises several issues.  The initial question this Court must answer is whether Machen's voluntarily dismissal of his suit against all defendants without prejudice (including those who have never been served) "trumps" the motions to dismiss filed by any defendant who had not filed an answer?  As set forth below, the Court finds that Machen is entitled to voluntarily dismiss his case without prejudice against any defendant who has yet to be served, and against any defendant who did not file an answer to the Complaint.  As to those defendants that answered and filed a motion to dismiss, (MDOR, Dicker, Hedback and Perlman), the Court must next determine whether Machen may unilaterally dismiss his case against them without prejudice, and if he cannot, whether they are entitled to dismissal of his claims against them with or

without prejudice.   The Court concludes that Machen may not voluntarily dismiss his claims against MDOR, Dicker, Hedback and Perlman and they are entitled to a dismissal of his case against them with prejudice.   Finally, as to those defendants who relied on facts outside the Complaint (Central Mortgage, the KleinBank Defendants and American Family) to support their motions to dismiss, the Court must resolve their motions can be treated as motions for summary judgment, and if yes, whether they are entitled to dismissal of Machen's claims against them with prejudice.   Based on the analysis below, the Court finds that it is appropriate to convert Central Mortgage's motion to dismiss to a motion for summary judgment and that it is entitled to dismissal of the claims against it with prejudice.   However, as to the KleinBank Defendants and American Family, the Court concludes that their motions cannot be treated as motions for summary judgment, and therefore, the case against them should be dismissed without prejudice.

### A.   Effect of Machen's Voluntary Dismissal

Machen did not specify the vehicle under which he was "cancelling" his suit without prejudice.   However, the Court has treated his pleading as a voluntary dismissal of his suit under Fed. R. Civ. P. 41.   This Rule provides in relevant part:

> (a) Voluntary Dismissal.
>
> > (1) By the Plaintiff.
> >
> > > (A) Without a Court Order. Subject to Rules 23(e), 23.1(c), 23.2, and 66 and any applicable federal statute, the plaintiff may dismiss an action without a court order by filing:
> > >
> > > > (i) a notice of dismissal before the opposing party serves either an answer or a motion for summary judgment; or

*** 

> (B) Effect. Unless the notice … states otherwise, the dismissal is without prejudice. But if the plaintiff previously dismissed any federal-or state-court action based on or including the same claim, a notice of dismissal operates as an adjudication on the merits.
>
> (2) By Court Order; Effect. Except as provided in Rule 41(a)(1), an action may be dismissed at the plaintiff's request only by court order, on terms that the court considers proper.

Fed. R. Civ. P. 41(a).

Rule 41(a)(1)(A)(i) permits a plaintiff to voluntarily dismiss his suit without prejudice and without any action by the Court when no answer or a motion for summary judgment has been filed.  "These two instances have been construed strictly and exclusively."  Safeguard Business Systems, Inc. v. Hoeffel, 907 F.2d 861, 863 (8th Cir. 1990).  "Because the rule permits dismissal as of right, it requires only notice to the court, not a motion, and permission or order of court is not required."  Id. (citing 5 J. Moore, Moore's Federal Practice ¶ 41.02, at 41-14 (1988); 9 C. Wright & A. Miller, Federal Practice & Procedure § 2363, at 159 (1971)). As the Eighth Circuit explained:

> In Foss v. Federal Intermediate Credit Bank, 808 F.2d 657, 660 (8th Cir.1986), we recognized that the rule "must not be stretched beyond its literal terms." Similarly, other courts have held that Rule 41(a)(1) creates a bright line that leaves no discretion to the courts. See, e.g., Santiago v. Victim Serv. Agency, 753 F.2d 219, 222 (2d Cir.1985)[10]; Thorp v. Scarne, 599 F.2d 1169, 1175 (2d Cir.1979). Thus, we consider only whether an answer or a motion for summary judgment was filed before the notice of voluntary dismissal.

---

[10]   Overruled on other grounds by Gell v. Hartmarx Corp., 496 U.S. 384 (1990), overruling recognized by Valley Disposal, Inc. v. Central Vermont Solid Waste Mgmt. Dist., 71 F.3d 1053, 1054 (2d Cir. 1995).

Id.  "Rule 41 is designed to 'fix the point at which the resources of the court and the defendant are so committed that dismissal without preclusive consequences can no longer be had as of right.'"  Id. (quoting In re Piper Aircraft Distrib. Sys. Antitrust Litig., 551 F.2d 213, 220 (8th Cir.1977)).  "The effect of a voluntary dismissal without prejudice is to render the proceedings a nullity and leave the parties as if the action had never been brought."  In re Piper Aircraft Distrib. Sys. Antitrust Litig., 551 F.2d 213, 219 (8th Cir. 1977) (citations omitted).  In such circumstances, "the district court [is] therefore, without jurisdiction to pass upon the merits of the case."  Foss, 808 F.2d at 660.

Based on the explicit language of Rule 41(a) and the unambiguous holdings of the Eighth Circuit, this Court finds that Machen's voluntary dismissal of the case as to all moving defendants who were not served or if served, did not answer the Complaint or file a motion for summary judgment, must be given effect.  While the Court is highly sympathetic to the time and effort expended by those defendants who pursued motions to dismiss in lieu of an answer,[11] "Rule 41 * * * sanctions no * * * case by case analysis of the amount of effort expended by defendants. * * * We have consistently held that Rule 41(a)(1) means what it says."  Foss, 808 F.2d at 660 (quoting Carter v. United States, 547 F.2d 258, 259 (5th Cir.1977)).  In short, Machen's voluntary dismissal before certain defendants were served or before certain moving defendants answered

---

[11]   These defendants' efforts may not be completely wasted.  "Rule 41(a)(1) gives a plaintiff a maximum of two bites at the apple."  In re Piper, 551 F.2d at 220.  Should Machen bring another suit making the same claims and again file a voluntary dismissal before an answer or motion for summary judgment, the dismissal will operate "as an adjudication upon the merits."  Id. (quoting Rule 41(a)(1)(B)) ("But if the plaintiff previously dismissed any federal-or state-court action based on or including the same claim, a notice of dismissal operates as an adjudication on the merits.").

or brought a motion for summary judgment, divested the Court of jurisdiction to render a decision on their motions.

On these grounds, the Court has no choice but to recommend that Machen's suit against the following defendants be dismissed without prejudice:  Scott Iverson, Patricia Patton, Daniel Klein, Matthew Klein, KleinBank, Mahlega Abdsharafat Athanta Croswell, Thomas Flynn, Thomas Alexander, Larkin, Hoffman, Daly Lindgren, Robin C. Campbell, Ken Collas, Karen Extel (Axtel), Ann Barry Moh (Ann Barry), Hennepin County Support and Collections, Andrew V. Moran, Bruce Peterson, Bev Lowe, Deusche Bank, Saxon Mortgage, Pro-Title Co., Patricia Bodine, Clifford Lozinski; Johnson, West & Co.; Richard Stanek, SMG, Inc., Associated Bank, Gerald Anderson, Michael Morton, Mark Saliterman, Morton Equity, LLC, KL Title/Brend colson #L. 20355319; Zurich Assurance of America; City of Chaska Economic Development Authority, Bank of America Mortgage, Aislee Smith, American Family Insurance, Commercial Properties, Commercial Partners, Mallie Sharafat.[12]

Defendants MDOR, Dicker, Hedback and Perlman answered Machen's Complaint.  Therefore, pursuant to Rule 41(a)(2), this Court must determine the terms on which the Complaint should be dismissed as to them, i.e. whether it should be dismissed with or without prejudice.

As for defendants Central Mortgage, American Family Insurance and the KleinBank Defendants, each of these parties submitted affidavits in connection with their motions to dismiss.  Consequently, the Court must examine whether it is appropriate to convert their motions to dismiss to motions for summary judgment.  If

---

[12]    The Court's decision to recommend dismissal without prejudice against the KleinBank Defendants and American Family is discussed in more detail below.

these motions to dismiss are converted to motions for summary judgment, then the Court may also rely on Rule 41(a)(2) to determine the terms on which the Complaint should be dismissed against these defendants.   Hamm v. Rhone-Poulenc Rorer Pharms., Inc., 187 F.3d 941, 950 (8th Cir. 1999) ("A Rule 12(b)(6) motion to dismiss, which has been converted by the district court into a motion for summary judgment, is considered for purposes of Rule 41(a)(1)(i) as a motion for summary judgment.") (citing Kurkowski v. Volcker, 819 F.2d 201, 203 (8th Cir. 1987); Chambers v. Gesell, 120 F.R.D. 1, 2 (D. D.C. 1988)).

**B.    Should Central Mortgage, American Family Insurance and KleinBank Defendants' motions to Dismiss be Converted to Motions for Summary Judgment?**

A motion to dismiss pursuant to Rule 12(b)(6) "'must be treated as a motion for summary judgment when matters outside the pleadings are presented to and not excluded by the trial Court.'"   Gibb v. Scott, 958 f.2d 814, 816 (8th Cir. 1992) (quoting Woods v. Dugan, 660 F.2d 379, 380 (8th Cir. 1981)). "Most courts … view 'matters outside the pleading' as including any written or oral evidence in support of or in opposition to the pleading that provides some substantiation for and does not merely recite what is said in the pleadings." Id. (internal citation and quotation omitted).  "The Court has complete discretion to determine whether or not to accept material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion." Stahl v. United States Dept. of Agric., 327 F.3d 697, 701 (8th Cir. 2003) (internal quotation and citation omitted).

Federal Rule of Civil Procedure 12(d) requires that when the court treats a motion to dismiss as a motion for summary judgment, the parties "must be given a

reasonable opportunity to present all the material that is pertinent to the motion."  The Eighth Circuit has held that "parties have constructive notice that the court will treat the motion as one for summary judgment when the moving party states that it is moving for summary judgment and the parties submit and refer to materials outside the complaint." Riehm v. Engelking, 538 F.3d 952, 962, n. 5 (8th Cir. 2008); see also Blair v. Willis, 420 F.3d 823, 827 (8th Cir. 2005) (stating that notice to the nonmoving party that the court intends to convert a Rule 12 motion to a Rule 56 motion – "whether actual or constructive – is typically required." ); Angel v. Williams, 12 F.3d 786, 788 (8th Cir. 1993) (Rule 12(b) "does not require the court to give affirmative notice to the parties of its intent to consider matters outside of the complaint" and constructive notice is sufficient when plaintiff has adequate time to respond.).  Examples where a party has been deemed to have received constructive notice that a motion to dismiss may be converted to a Rule 56 motion include when opposing party had the opportunity file an amended complaint before a court ruled on the motion and had substantial time to respond to the motion, (see Blair, 420 F.3d at 827), or when the opposing party acknowledged the outside materials in it responsive papers, or has submitted papers outside the complaint for consideration.  See Riehm, 538 F.3d at 962, n. 5; Angel, 12 F.3d at 788.

At the same time, in the case involving a pro se party, the Court must proceed with caution in converting a motion to dismiss to a motion for summary judgment. Malaney v. Elal Israel Airlines, 331 Fed. Appx. 772, 774 (2d Cir. 2009) ("A district court may convert a motion to dismiss into a summary judgment motion if the court gives sufficient notice to an opposing party and an opportunity for that party to

respond…notice is particularly important when a party is proceeding pro se.") (internal citations and quotations omitted); Beacon Enter., Inc. v. Menzies, 715 F.2d 757, 767 (2nd Cir. 1983) (reversing as error the district court's conversion of a motion to dismiss to a motion for summary judgment without "unequivocal notice" to pro se litigant and noting that "notice is particularly important when a party is proceeding pro se and may be unaware of the consequences of his failure to offer evidence bearing on triable issues.") (internal citations omitted).

Applying these precepts to the motions filed by Central Mortgage, American Family and the KleinBank Defendants, which relied on materials outside the Complaint, only Central Mortgage discussed summary judgment as an alternative to its motion to dismiss, and even then was not abundantly clear that it was moving for summary judgment in the alternative. Central Mortgage Mem., pp. 2-3. Nonetheless, the Court finds that Central Mortgage's submission of the Howard affidavit, its explicit references to summary judgment in its memorandum, and its recitation of the summary judgment standard requiring the opposing party to set forth specific facts showing that there is a genuine issue for trial, put Machen on constructive notice that Central Mortgage was asking the Court to convert its motion to dismiss to a motion for summary judgment. Machen did not respond in any way, except to file his notice of dismissal.

On the other hand, the KleinBank Defendants and American Family Insurance did not move for summary judgment in the alternative, and there is no reference in their motions or memoranda to summary judgment, despite the fact that both parties submitted affidavits in support of their motions. Under these circumstances, these defendants did not provide adequate notice to Machen that summary judgment was a

possibility and, therefore, the Court cannot find that he had constructive notice that the Court would treat their motions under Rule 56.   Finding that their motions did not constitute a motion for summary judgment, the Court must find that Machen's voluntary dismissal is governed by Rule 41(a)(1)(A)(i) and the Court is divested of jurisdiction to render a decision on their motions.

Based on this analysis, the Court concludes that only Central Mortgage's motion to dismiss can be converted to a motion for summary judgment, and the motions to dismiss American Family and the KleinBank Defendants cannot.   Therefore, as earlier indicated, the Court finds that Machen's suit against American Family and the KleinBank Defendants must be dismissed without prejudice.

### C.   Motions to Dismiss by MDOR, Dicker, Hedback, Perlman and Central Mortgage

#### 1.   Standard of Review

In considering a motion to dismiss under Rule 12(b)(6), there are several principles at play which bear on this Court's decision whether to dismiss Machen's suit against the MDOR, Dicker, Hedback, Perlman and Central Mortgage with or without prejudice.   For starters, when a party brings a motion to dismiss, the pleadings are construed in the light most favorable to the non-moving party, and the facts alleged in the complaint must be taken as true.   Ashley County, Ark. v. Pfizer, Inc., 552 F.3d 659, 665 (8th Cir. 2009).   In addition, "the court must resolve any ambiguities concerning the sufficiency of the plaintiffs' claims in favor of the plaintiffs, and give the plaintiffs the benefit of every reasonable inference drawn from the well-pleaded facts and allegations in their complaint."   Ossman v. Diana Corp., 825 F. Supp. 870, 880 (D. Minn. 1993) (internal quotation marks and citations omitted).   At the same time, to withstand a

motion to dismiss under Rule 12(b)(6), litigants must properly plead their claims under Rule 8 of the Federal Rules of Civil Procedure and meet the principles articulated by the United States Supreme Court in <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) and <u>Ashcroft v. Iqbal</u>, 129 S.Ct. 1937 (2009).

Under Rule 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  This pleading requirement does not require detailed factual allegations.  <u>Martin v. ReliaStar Life Ins. Co.</u>, Civil No. 09-01578 (MJD/AJB), 2010 WL 1840877 at *8 (D. Minn. 2010) (citing <u>Twombly</u>, 550 U.S. at 555). On the other hand, a "pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" <u>Iqbal,</u> 129 S. Ct. at 1949 (quoting <u>Twombly</u>, 550 U.S. at 555).  Thus, to "survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" <u>Iqbal</u>, 129 S. Ct. at 1949 (quoting <u>Twombly</u>, 550 U.S., at 570).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Iqbal</u>, 129 S. Ct. at 1949 (quoting <u>Twombly</u>, 550 U.S. at 556).   "[T]he plausibility standard, which requires a federal court complaint to 'state a claim for relief that is plausible on its face, … asks for more than a sheer possibility that a defendant has acted unlawfully."  <u>Ritchie v. St. Louis Jewish Light</u>, 630 F.3d 713, 717 (8th Cir. 2011) (internal quotation and citation omitted).  "Determining whether a complaint states a plausible claim for relief will, . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." <u>Iqbal</u>, 129 S. Ct. at 1950.

A complaint fails to state a claim for relief when it fails to provide fair notice of the grounds for the claims made against a particular defendant by lumping all defendants together and not sufficiently alleging who did what to whom.  Tully v. Bank of America, N.A., CIV. NO. 10–4734 (DWF/JSM), 2011 WL 1882665 at *6 (D. Minn. May 17, 2011) (citing Liggens v. Morris, 749 F. Supp. 967, 971 (D. Minn. 1990) ("Plaintiffs assert each of the causes of action against the Defendants generally, but do not otherwise specify which claims are asserted against any particular defendant, or which specific claims each Plaintiff is asserting. Thus, the Bank Defendants, and the Court, are left to guess which Plaintiffs are asserting which claims against which Defendants. The Court concludes that such pleading is inadequate and that Rule 8 requires greater specificity than that found in Plaintiffs' Amended Complaint.").  See also Gurman v. Metro Hous. & Redevelopment Auth., 2011 U.S. Dist. LEXIS 69977 at *3 (June 29, 2011) (dismissing amended complaint without prejudice[13] for failing to meet Rule 8 pleading standard and noting that "the Court has repeatedly criticized the filing of 'kitchen-sink' or 'shotgun' complaints—complaints in which a plaintiff brings every conceivable claim against every conceivable defendant.) (citations omitted); Moua v. Jani-King of Minn., 613 F. Supp. 2d 1103, 1111 (D. Minn. 2009) ("Plaintiffs' fraud claims fail to satisfy Rule 9(b) because the allegations cluster all the Defendants together without the required specificity to discern the respective roles of the individual defendants in the alleged fraud scheme.").

In summary, the pleading standard articulated by Rule 8 "does not require detailed factual allegations, but it [does demand] more than an unadorned, the-

---

[13]   Judge Schiltz stayed his order of dismissal for thirty days to allow plaintiffs to file a second amended complaint that complied with the directives set forth in his order. Gurman, 2011 LEXIS 69977 at *15.

defendant-unlawfully-harmed-me accusation." Iqbal, 129 S. Ct. at 1949 (internal quotation marks and citations omitted). In making this determination, "the complaint should be read as a whole, not parsed piece by piece to determine whether each allegation, in isolation, is plausible." Braden v. Wal-Mart Stores, Inc., 588 F.3d 585, 594 (8th Cir. 2009) (citations omitted).

Pro se complaints, "however inartfully pleaded" are held to "less stringent standards than formal pleadings drafted by lawyers." Haines v. Kerner, 404 U.S. 519, 520 (1972). "'[I]f the court can reasonably read the pleadings to state a valid claim on which the [plaintiff] could prevail, it should do so despite the [plaintiff's] failure to cite proper legal authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements.'" Barnett v. Hargett, 174 F.3d 1128, 1133 (10th Cir.1999) (quoting Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir.1991)). But the court's liberal construction does not extend to allowing defective and insufficiently pled claims to proceed. Stone v. Harry, 364 F.3d 912, 914 (8th Cir. 2004) (pro se complaint must allege facts sufficient to support the claims advanced); Martin v. Sargent, 780 F.2d 1334, 1337 (8th Cir.1985). ("[A]lthough it is to be liberally construed, a pro se complaint must contain specific facts supporting its conclusions."); Kaylor v. Fields, 661 F.2d 1177, 1183 (8th Cir.1981) ("[P]leadings * * *brought pro se [ ] are to be liberally construed. * * * But a well-pleaded complaint must contain something more than mere conclusory statements that are unsupported by specific facts.") (citations omitted). Neither may the courts, in granting the deference owed to pro se parties, "assume the role of advocate for the pro se litigant." Barnett, 174 F.3d 1133.

"Ordinarily dismissal of a [pleading] for failure to comply with Rule 8 should be with leave to amend." <u>Michaelis v. Nebraska State Bar Ass'n</u>., 717 F.2d 437, 438-39 (8th Cir. 1983).   Nonetheless, when a complaint is so deficient or defective that the court is convinced that its defects cannot be cured through re-pleading, dismissal with prejudice is appropriate.  <u>Ikechi v. Verizon Wireless</u>, Civ. No. 10-4554 (JNE/SER), 2011 WL 2118797 at *5, n. 6 (D. Minn. April 7, 2011) (recommending dismissal with prejudice of plaintiff's fraud claims because it was unlikely that plaintiff could cure the defective pleading on re-pleading), 2011 WL 2118791 at *3 (D. Minn. May 25, 2011) (adopting the Report and Recommendation of Magistrate Judge Rau regarding dismissal of plaintiff's fraud claims for failure to satisfy the particularity requirement of Rule 9(b)); <u>McLean v. United States</u>, 566 F.3d 391, 400-401 (4th Cir. 2009) ("to the extent…that a district court is truly unable to conceive of any set of facts under which a plaintiff would be entitled to relief, the district court would err in designating [a] dismissal to be without prejudice. Courts, including this one, have held that when a complaint is incurable through amendment, dismissal is properly rendered with prejudice and without leave to amend."); <u>McKesson HBOC, Inc. v. New York State Common Ret. Fund, Inc.</u>, 339 F.3d 1087, 1096 (9th Cir. 2003) (dismissal with prejudice is appropriate where "deficiencies in [plaintiff's] claims cannot be cured by amendment"); <u>Cato v. United States</u>, 70 F.3d 1103, 1106 (9th Cir. 1995) (a <u>pro se</u> litigant should be given chance to amend complaint unless it is "absolutely clear that the deficiencies of the complaint could not be cured by amendment.").

With these principles in mind, the Court considers whether Machen's RICO, fraud and discrimination claims against the MDOR, Dicker, Hedback, Perlman and Central Mortgage should be dismissed with or without prejudice.

### 2.     RICO Claim

Machen's sole reference to a RICO violation is reflected in the following passages of his Complaint:

> The plaintiff herein request that the court permit this lawsuit as a joint claim against <u>all the defendants</u> and allow for any separate agreeably accepted stipulated settlement(s) and that it be considered a RICO filing based on the treble damages contained in the RICO Act 1970.  The alleged joint acts of the defendants was well Orchestrated racketeering influenced Corruption Organization aimed at complete destroyment [sic] and defraud of the plaintiffs.  The group functionality was likened to an interwoven weave of boxhelder [sic] bugs so as not to have anyone penetrate the alleged crimes committed by all.
>
> ***
>
> The group started with a few and then attracted many with the conspiracy to, totally defraud the complainant [sic] of his rightful earned accumulations of equity, redistributing unjust enrichment to all involved, allegedly breaking the laws to achieve its end.
>
> ***
>
> Claimant alleges that these banks and or mortgage companies along with Mahlega Abdsharafat are racketeering to confiscate a $3,000,000 property and $1,600,000 value of contents for self-unjust enrichment.

Complaint, p. 1; ¶19 (emphasis added).

The RICO Act, under 18 U.S.C. § 1962(b), provides:

> It shall be unlawful for any person through a pattern of racketeering activity or through collection of an unlawful debt to acquire or maintain, directly or indirectly, any interest in or

> control of any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce.

To state a claim for damages under RICO, a complaint must "show '(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity.'" <u>Crest Const. II, Inc. v. Doe</u>, 660 F.3d 346, 353 (8th Cir. 2011) (quoting <u>Nitro Distrib., Inc. v. Alticor, Inc.</u>, 565 F.3d 417, 428 (8th Cir. 2009), quoting <u>Sedima S.P.R.L. v. Imrex Co.</u>, 473 U.S. 479, 496 (1985) (footnote omitted)).

A RICO enterprise consists of "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact, although not a legal entity." 18 U.S.C. § 1961(4). "The enterprise does not have to have a hierarchy, chain of command, fixed roles, or even a method of making decisions. An association-in-fact enterprise need only have 'three structural features: (1) a purpose, (2) relationships among those associated with the enterprise, and (3) longevity sufficient to permit these associates to pursue the enterprise's purpose.'" <u>Crest Constr. II</u>, NO. 07-0728-CV-W-DGK, 2010 WL 3456690 at *3 (W.D. Mo. Aug. 27, 2010) (quoting <u>Boyle v. United States</u>, 129 S.Ct. 2237, 2243-2244 (2009)); <u>see</u> <u>also</u> <u>Murrin v. Fischer</u>, 07-CV-1295 (PJS/RLE), 2008 WL 540857 at *12 (D. Minn. Feb. 25, 2008) ("As defined by RICO, an enterprise has three (3) components: (1) a common or shared purpose; (2) some continuity of structure and personnel; and (3) an ascertainable structure different from that inherent in a pattern of racketeering.") (citing <u>United States v. Lee</u>, 374 F.3d 637, 647 (8th Cir. 2004), <u>cert.</u> <u>denied</u>, 545 U.S. 1141 (2005); <u>United States v. Kehoe</u>, 310 F.3d 579, 586 (8th Cir. 2002), <u>cert.</u> <u>denied</u>, 538 U.S. 1048 (2003); <u>McDonough v. National Home Insur. Co.</u>, 108 F.3d 174, 177 (8th Cir. 1997); <u>United States v. Lemm</u>, 680 F.2d 1193, 1198 (8th Cir. 1982), <u>cert.</u> <u>denied</u>, 459 U.S. 1110 (1983)).

To make out a "pattern of racketeering activity," 18 U.S.C. § 1961(5), requires a plaintiff to plead the existence of at least two predicate acts of racketeering activity, as defined in 18 U.S.C. § 1961(1), and to further establish that those predicate acts manifest the elements of "continuity plus relationship."  Murrin, 2008 WL 540857 at *12 (citing H.J. Inc. v. Northwestern Bell Telephone Co., 492 U.S. 229, 238-39 (1989)).

"Racketeering activity" refers to criminal activity and includes bribery and extortion, "which is chargeable under State law and punishable by imprisonment for more than one year"; and certain acts "indictable" under federal law.  See 18 U.S.C. § 1961(1)(A), (B).  "[T]o prove a pattern of racketeering activity a plaintiff . . . must show that the racketeering predicates are related, and that they amount to or pose a threat of continued criminal activity."  Craig Outdoor Advertising, Inc. v. Viacom Outdoor, Inc., 528 F.3d 1001 1028 (8th Cir. 2008) (citations omitted).  To do this "a plaintiff must provide evidence of multiple predicate acts occurring over a substantial period of time (closed-end continuity) or evidence that the alleged  predicate acts threaten to extend into the future (open-ended continuity)."  Id.; see also Murrin, 2008 WL 540857 at *12 ("Continuity can be either closed- or open-ended") (citing H.J. Inc., v. Northwestern Bell Tele. Co. 492 U.S. 229, 241-42 (1989)). "A party alleging a RICO violation may demonstrate continuity over a closed period by proving a series of related predicates extending over a substantial period of time," although '[p]redicate acts extending over a few weeks or months and threatening no future criminal conduct do not satisfy this requirement.'"  Murrin, 2008 WL 540857 at *12 (citing H.J. Inc., 492 U.S. at 238-39; United States v. Hively, 437 F.3d 752, 761 (8th Cir. 2006) (noting that Courts have found that closed-ended continuity requires a scheme that lasts at least one year)).  "In

contrast, open-ended continuity can be established by showing the existence of a specific threat that extends indefinitely into the future." Id. (citing Lange v. Hocker, 940 F.2d 359, 361 (8th Cir. 1991); Hively, 437 F.3d at 761). Thus, to establish open-ended continuity, the plaintiff must show "that the predicate acts themselves involve a distinct threat of long-term racketeering activity or that the predicate acts constitute a regular way of conducting an on-going legitimate business or a RICO enterprise." Crest Constr. II, 2010 WL 3456690 at *3.

A RICO claim based on fraud must be pled with particularity under Rule 9(b). "Under Rule 9(b)'s heightened pleading standard, allegations of fraud ... [must] be pleaded with particularity. In other words, Rule 9(b) requires plaintiffs to plead the who, what, when, where, and how: the first paragraph of any newspaper story." Summerhill v. Terminix, Inc., 637 F.3d 877, 880 (8th Cir. 2011) 637 F.3d at 880 (alteration in original) (citation and internal quotation marks omitted).

Affording Machen the benefit of a liberal construction of his pleadings, this Court cannot read into his Complaint a properly pled RICO claim against the MDOR, Dicker, Hedback, Perlman and Central Mortgage. First, Machen's statements regarding RICO are exactly the sort of conclusory statements soundly rejected under Iqbal and Twombly. Second, Machen pled no facts to support a claim of racketeering activity by any of these defendants (i.e. criminal acts) or a pattern of racketeering activity – to the contrary, what facts are alleged against these defendants stem from individual dealings each of the defendants had with Machen. See Handeen v. Lemaire, 112 F.3d 1339, 1353 n. 19 (8th Cir. 1997) (quoting Terry A. Lambert Plumbing, Inc. v. Western Sec. Bank, 934 F.2d 976, 981 (8th Cir.1991) ("a single transaction which involves only one

victim and takes place over a short period of time does not constitute the pattern of racketeering required for long-term criminal activity under a RICO claim."). Third, Machen failed to allege an enterprise, much less one engaged in interstate or foreign commerce, as required by the statute. Indeed, the Complaint is silent as to any relationship these defendants may have had with each other, and Hedback is not even mentioned in the Complaint apart from the caption.

It is not the Court's role to attempt to resuscitate Machen's defective pleading. See GJR Invs., Inc. v. County of Escambia, 132 F.3d 1359, 1369 (11th Cir. 1998) ("Yet even in the case of pro se litigants this leniency does not give a court license to serve as de facto counsel for a party or to rewrite an otherwise deficient pleading to sustain an action.") (internal citations omitted), overruled on other grounds, Randall v. Scott, 610 F.3d 701, 709 (11th Cir. 2010). Machen's Complaint failed in every way to properly plead a cause of action under RICO and this Court has no reason to believe that it can ever be cured. Where as here, the Complaint is "based entirely on delusional perceptions of persecution, unreasonable inferences drawn from those delusions, incoherent explanations of fact, or conclusory legal claims cast in the form of factual allegations," it may be dismissed with prejudice "for the sake of judicial economy." Adams v. F.B.I., CIV. NO. 06-07321, 2007 WL 627912 at *2 (N.D. Cal. Feb. 26, 2007). Therefore, this Court recommends dismissal of this claim with prejudice as to the MDOR, Dicker, Hedback, Perlman, and Central Mortgage.

### 3.    Fraud

To state a claim for common law fraud under Minnesota law, a plaintiff must prove: (1) there was a false representation by a party of a past or existing material fact;

(2) that was made with knowledge of the falsity of the representation or made as of the party's own knowledge without knowing whether it was true or false; (3) with the intention to induce another to act in reliance thereon; (4) that the representation caused the other party to act in reliance thereon; and (5) that the party suffered pecuniary damage as a result of his or her reliance.  Specialized Tours, Inc. v. Hagen, 392 N.W.2d 520, 532 (Minn.1986).  Federal Rule of Civil Procedure 9(b) requires fraud claims to be plead with "particularity."  "In other words, the complaint must plead the who, what, where, when, and how" of the alleged fraud.  Drobnak v. Andersen Corp., 561 F.3d 778, 783 (8th Cir. 2009).  "This requirement is designed to enable defendants to respond specifically, at an early stage of the case, to potentially damaging allegations of immoral and criminal conduct.  The level of particularity required depends on, inter alia, the nature of the case and the relationship between the parties.  Conclusory allegations that a defendant's conduct was fraudulent and deceptive are not sufficient to satisfy the rule."  BJC Health Sys. v. Columbia Cas. Co., 478 F.3d 908, 917 (8th Cir.2007) (citations and internal quotation marks omitted).

None of the allegations in the Complaint allege any misrepresentations by MDOR, Dicker, Hedback, Perlman, and Central Mortgage, or for that matter, come remotely close to meeting the Rule 9(b) standard of particularity.  For example: The only reference to the MDOR is in paragraph 22 of the Complaint, in which Machen asserted that the IRS and MDOR "piggy-backed each other to accept fraud reporting and/or manufactured documents to assess insane taxes."  This is not a cognizable cause of action, much less a claim for fraud.

To the extent that Machen's complaint that Dicker "bamboozled" him in connection with his bankruptcy and child support proceedings could be construed to be a claim for fraud, that claim fails because Machen failed to plead any of the requisite elements of fraud. Paragraph 10 of the Complaint, which contains the allegations against Dicker, alleges that Dicker advised Machen in connection with Judge Peterson's property sequestration order, Machen deposited $154,000 with the court, and the funds were disbursed as support payments until 2007. Fraud on Dicker's part cannot be gleaned from the allegations in this paragraph. However, even if Machen could cure all of the pleading deficiencies of his fraud claim against Dicker, the claim is futile as it is time-barred. Dicker's last interactions with Machen were in 2003 or 2004. Complaint, ¶10; Dicker Mem., pp. 7-8; Machen Aff., p. 2. Pursuant to Minn. Stat. §541.05, fraud claims are subject to a six-year statute of limitations. Any theoretical cause of action against Dicker for fraud expired in 2009.

Hedback is not mentioned apart from the caption. The only mention of Central Mortgage is found in paragraph 17 of the Complaint, which alleged that a mortgage "was moved about from Maribella Mortgage to GMAC, Central Mortgage, Saxon Mortgage and Deuche [sic] Bank without my notarized or actual signature." Central Mortgage serviced a mortgage executed by Machen, but never held any interest in the mortgage and knows nothing about the origination of the mortgage or what happened to the mortgage after it ceased being the servicer. Howard Aff., ¶¶3-5. The Complaint is devoid of facts or allegations of fraud regarding Hedback or Central Mortgage.

Similarly, there are no allegations of fraud against Perlman. The sole reference to Perlman is that he was present on the day that Machen was removed from his home

pursuant to the execution of a writ for unlawful detainer issued by the Hennepin County district court.  Complaint, ¶20; see Answer of Michael Perlman, ¶3.  The Complaint does not allege any of the elements of fraud against Perlman and there is no indication in any of the pleadings that Machen and Perlman had any interaction with each other apart from Perlman's presence on the day Machen was removed from his residence.

Except to invoke the word fraud here and there in his Complaint, Machen has set forth no facts that remotely resemble a claim of fraud.  Like the RICO claim, this Court has no reason to believe that Machen's claim of fraud can ever be cured.  For all of these reasons, this Court recommends that Machen's claim of fraud against the MDOR, Dicker, Hedback, Perlman, and Central Mortgage be dismissed with prejudice.

### 4.    Discrimination

Machen's complaint for "discrimination" is completely incoherent.  The Complaint alleged that:

> As exhibits have allowed evidentiary document proof there exists scams, bogus, larceny agreement, collusion, forgery of signatures, fraud and discrimination fueled by an American history of slavery with its emancipation proclamation of 1863 via president A. Lincoln, Tenant farming, Jim Crow laws, the 1964 & 1967 Civil Rights Acts have not eradicated the undercurrent of bias, having been preceded by Plessy v. Fergerson [sic] 1898 and then 1954 Brown Vs. Bd Education for school integration.

Complaint, p. 1.  Machen's accompanying affidavit stated that "[t]ime now for all to get their due for the wrong doings and alleged crimes committed in this long excruciating suffering caused by racism, jealousy, and unconstitutional treatment … .  Machen Aff., p. 2.  These are the only two references in the Complaint to "discrimination" and they make no reference to the MDOR, Dicker, Hedback, Perlman, or Central Mortgage.  The

Court declines to attempt to analyze these statements within the context of the Civil Rights Act of 1964, as amended, when Machen has not indicated which portion of the Act he is proceeding under, whether he is a member of a protected class, or how any of the defendants "discriminated" against him.  Machen's use of the words "discrimination" and "racism" cannot be construed to state a cause of action.  Machen's discrimination claim is the quintessence of a "pleading that offers 'labels and conclusions'" … described by Iqbal.  129 S. Ct. at 1949 (quoting Twombly, 550 U.S. at 555).

In any event, even if Machen were permitted to amend his Complaint to allege facts to support a claim of discrimination, such a claim is futile, as it too is time-barred.  In order to commence a legal action asserting a claim of race discrimination, a discrimination charge under Title VII must first be filed with the Equal Employment Opportunity Commission within 300 days of the alleged discrimination, 42 U.S.C. §2000e-5(e)(1).[14]  Whatever acts Machen is complaining against any defendant, they ended in 2009, (see Complaint, ¶20), and cannot now be pursued.[15]

For all of these reasons, Machen's claim of discrimination against MDOR, Dicker, Hedback, Perlman, and Central Mortgage should be dismissed with prejudice.

_____

[14]    If Machen were making a claim of race discrimination under the Minnesota Human Rights Act, the suit must be commenced in court or the charge of discrimination filed with the Minnesota Department of Human Rights within one year of the act of discrimination.  Minn. Stat. §362A.28, subd. 3.

[15]    While neither MDOR, Dicker, Hedback, Perlman, nor Central Mortgage raised this issue in their briefs, the Court "has the power to sua sponte dismiss a complaint for failure to state a claim."  Smith v. Boyd, 945 F.2d 1041, 1043 (8th Cir. 1991) (quoting Mildfelt v. Circuit Court, 827 F.2d 343, 345 (8th Cir. 1987) (per curiam)); Hanson v. Sullivan, (NO. 3:91-706), 1992 WL 227610 at *3 (D. Minn. June 02, 1992) (dismissing suit sua sponte for failure to state a claim where it was obvious that the plaintiff could not prevail on the facts alleged.)

### 5.    Other Grounds for Dismissal

This Court has concluded that Machen's Complaint failed to state a claim for which relief could be granted and should be dismissed with prejudice as to the MDOR, Dicker, Hedback, Perlman and Central Mortgage.  As to the MDOR, there are additional grounds upon which dismissal with prejudice should be granted.

Under the Eleventh Amendment, federal courts do not have subject matter jurisdiction over a claim against a state for damages when the state has not consented to the suit.  Seminole Tribe of Florida v. Florida, 517 U.S. 44, 64-65 (1996); Roberts v. Dillon, 15 F.3d 113, 115 (8th Cir. 1994).  This immunity extends to state officials as well since "a suit against a state official in his or her official capacity is a suit against the official but rather is a suit against the official's office [and] is no different from a suit against the State itself."  Will v. Michigan Dep't of State Police, 491 U.S. 58, 71 (1989). When a lawsuit is barred by the Eleventh Amendment, the case must be dismissed for lack of subject matter jurisdiction.  Seminole Tribe, 517 U.S. at 64-65.  Absent a clear statement that officials are being sued in their individual capacities, a complaint is construed to be against individual in their official capacity.  Murphy v. Arkansas, 127 F.3d 750, 754 (8th Cir. 1997).  The State of Minnesota has not waived its immunity from suit in federal court for Machen's claims.  See DeGidio v. Perpich, 612 F. Supp. 1383, 1388-89 (D. Minn. 1985) (Minnesota's limited waiver of sovereign immunity in state court pursuant to the State's Tort Claims Act is not a waiver of Eleventh Amendment immunity from suit in federal court for federal claims).  Thus, the MDOR is immune from suit in federal court.

Furthermore, to the extent that the Complaint can be construed to be an appeal of a state tax assessment, this Court lacks jurisdiction to consider such an appeal, which is the exclusive purview of the Minnesota Tax Court.  Minnesota Statute §271.01, subd. 5 provides that "[e]xcept for an appeal to the supreme court or any other appeal allowed under this subdivision, the Tax Court shall be the sole, exclusive, and final authority for the hearing and determination of all questions of law and fact arising under the tax laws of the state… ."  As argued by the MDOR, any complaints Machen had regarding tax assessments (and the Complaint is completely vague as to what assessment he might be protesting) must be raised to the Tax Court, and not this Court. See M.A. Mortenson v. Minnesota Comm'r of Revenue, 470 N.W.2d 126, 128-130 (Minn. Ct. App. 1991) (reversing district court order denying motion to dismiss tax assessment claim for lack of subject matter jurisdiction, and stating "the tax court has jurisdiction to decide this tax assessment matter completely.").  Where re-pleading will not cure the jurisdictional hurdle raised by Minn. Stat. §271.01, subd. 5, dismissal with prejudice as to all claims involving the MDOR's role in tax assessments of Machen's property is appropriate.

## III.   CONCLUSION

In conclusion, this Court finds that Machen's voluntary dismissal divested this Court of jurisdiction over claims against any defendant who was not served with the Complaint, and against any defendant who did not answer of file a motion for summary judgment.  As to those defendants who did file an answer and move to dismiss (the MDOR, Dicker, Hedback, Perlman) or gave constructive notice that they were seeking summary judgment (Central Mortgage), this Court determined that their motions should

be granted and the claims against them be dismissed with prejudice because they cannot be cured.

IV.     **RECOMMENDATION**

For the reasons set forth above, it is recommended that:

1.      Defendants Clifford Lozinski and Johnson, West & Co., PLLC's Motion to Dismiss [Docket No. 10]; Defendants Thomas Flynn, Thomas Alexander, and Larkin, Hoffman Daly & Lindgren LTD's Motion to Dismiss [Docket No. 16]; Defendant City of Chaska's Motion to Dismiss [Docket No. 28]; Defendants Ann Barry Moh (Anne Barry) and the Hon. Bruce Peterson's Motion to Dismiss [Docket No. 31]; Defendans Patricia Bodin and ProTitle, Co.'s, Motion to Dismiss [Docket No. 32]; Defendants Richard Stanek, Hennepin County Support and Collections, Bev Lowe, Ken Collias and Karen Extel's Motion to Dismiss [Docket No. 37]; Defendants Saxon Mortgage and Deutsche Bank's Motion to Dismiss or in the Alternative for a More Definite Statement [Docket No. 42]; Defendants KleinBank, Daniel Klein and Matthew Klein's Motion to Dismiss [Docket No. 56]; Defendants Associated Bank, National Association and Gerald Anderson's Motion to Dismiss [Docket No. 63]; the United States' Motion to Substitute as Proper Defendant for Scott Iverson and Patricia Patton and Motion to Dismiss [Docket No. 84]; Defendant American Family Insurance's Motion to Dismiss [Docket No. 91]; be DENIED as moot in light of Machen's Notice of Voluntary Dismissal and Plaintiff's Complaint be dismissed without prejudice as to these defendants;

2.      Defendant Central Mortgage's Motion to Dismiss [Docket No. 18]; Defendant Minnesota Department of Revenue's Motion to Dismiss [Docket No. 20]; Defendant Joseph Dicker's Motion to Dismiss [Docket No. 67]; Defendant John

Hedback's Motion to Dismiss [Docket No. 69]; and Defendant Michael L. Perlman's Motion to Dismiss [Docket No. 98] be GRANTED and Plaintiff's Complaint against these defendants be dismissed with prejudice.

3.    Plaintiff's Complaint against the remaining defendants, Mahlega Abdsharafat Athanta Croswell, Robin C. Campbell (f/k/a Robin Machen), Andrew Moran, SMG, Inc., Michael Morton, Mark Saliterman, Morton Equity LLC, Bank of America Mortgage, KL Title/Brend[a] Colston, Zurich Assurance, Bank of America Mortgage, Aislee Smith, Commercial Properties, Commercial Partners and Mallie Sharafat be dismissed without prejudice.

Dated: January 23, 2012                              *Janie S. Mayeron*
                                                     JANIE S. MAYERON
                                                     United States Magistrate Judge

## NOTICE

Under D. Minn. LR 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties by **February 6, 2012**, a writing which specifically identifies those portions of this Report to which objections are made and the basis of those objections.  Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals.  A party may respond to the objecting party's brief within fourteen days after service thereof.  A judge shall make a de novo determination of those portions to which objection is made.  This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable to the Court of Appeals.